In re PANAMA TRANSP. CO.
THE J. H. SENIOR.

Petition of UNITED STATES.

THE J. PINCKNEY HENDERSON.

United States District Court
S. D. New York.
May 29, 1951.

See also, D.C., 73 F.Supp. 716.

 

————◆————

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for claimants.

Chauncey I. Clark, Haight, Deming, Gardner, Poor & Havens, Macklin, Speer, Hanan & McKernan, James F. Bohan, Nash, Ten Eyck, Maximov & Freehill, Elizabeth Robinson, Mendes & Mount, Alexander T. Wells, Max Lustig, Benjamin B. Sterling, Edgar H. A. Chapman, Lyeth & Voorhees, Raymond Greene, Simone N. Gazan, Austrian & Lance, Lord, Day & Lord, Jacob Rassner, Homer Loomis, James N. Senecal, Fink & Frank, Atkins & Weymar, Hunt, Hill & Betts, J. Lester Parsons, Jr., Michelsen & Elliott, Duer, Strong & Whitehead,. William S. O'Connor, Breed, Abbott & Morgan, Pyne, Lynch & Smith, Monica & Feury, Abraham Harris, Bigham, Englar, Jones & Houston and Mahar & Mason, all of New York City, for various claimants.

Joseph M. Brush, Richard M. Cantor, J. Emerson Gough, all of New York City, for Senior Henderson Proctors Committee.

IRVING R. KAUFMAN, District Judge.

The Court has before it exceptions to the report of the "Senior-Henderson Proctors Committee" (hereafter the Committee) in the limitation proceedings herein. These proceedings arose out of the collision between the tanker J. H. Senior and the liberty ship J. Pinckney Henderson on August 18, 1943 as a result of which 98 crew members lost their lives and 5 suffered personal injuries. In March 1950 a settlement of the claims was agreed upon to the effect that each of the petitioners, the owners of the vessels, would pay $325,000 into a fund as complete payment for its respective possible liability, and by stipulation embodied in an order of this district court the Committee was appointed "to determine the validity and amount of each claim for loss of life, personal injuries and for loss of personal effects which the respective 'Death and Personal Injury Claimants may have against the petitioners; to compute the pro rata share, based on such amounts, of each such Claimant in 'The Fund'; to report the same to the Court. * * *"

The Committee has filed its report recommending the dividing of the $650,000 fund among the claimants. The exceptions can be divided into two groups—(1) a group of 5 claimants who object to the recommendation by the Committee that there be deducted from the pro rata share of these claimants in the settlement fund certain payments made to these claimants, and (2) a group of 3 claimants, two of whom received zero awards, who allege that their awards are insufficient. The other claimants who filed exceptions have indicated to the Court that they intend to waive their exceptions. The second group designated above will be considered at the outset.

 The claimants who were granted zero awards are Lillian Elgin Wright, Administratrix of the estate of James Elgin, and the Administrator of the estate of Knud Moller on behalf of the brothers and sisters of that decedent. Proctor for claimant Wright objects to the use of the Death on the High Seas Act, 46 U.S.C.A. §§ 761–768, as a guide in determining the validity and value of the claims because he alleges that there is no question of fault here which must be proved under that Act. The question of fault is not in this case because of the settlement agreement. The Committee had to have some guide to determine who can maintain a claim and what the value of the claim should be, and their use of the Death on the High Seas Act as indicated to the Court was proper, since collaterals are given the right to bring suit and the broadest recovery for their pecuniary loss under that Act. If suit had been brought, it would most likely have been brought under that Act; or if so desired under the narrower (in respect to allowable claimants) Jones Act, 46 U.S. C.A. § 688.

An examination of the files of these claimants and of other collaterals shows

that the Committe did consider sisters and brothers as valid claimants in their evaluations even absent a showing of "dependency", which is in accordance with the more liberal decisions under the Death on the High Seas Act. The test applied by the Committee was loss of pecuniary benefits reasonably to be expected had the deceased lived. This rule is not limited to the Death on the High Seas Act but is the general rule governing recovery in any death case. "Reasonable expectation" however does not mean mere possibility of benefits. The Committee required that the claimant show contribution from the decedents or at least a promise that contribution would be forthcoming before granting an award.

■ The claim of the estate of Knud Moller admits that there is no proof of actual support, and there is no evidence of pecuniary loss of any kind to the brothers and sisters of the decedent. Cf. The Libby Maine, 1943, 1945 A.M.C. 243. In regard to Lillian Wright's claim, there is also lacking any evidence of support or contribution sufficient to justify an award or evidence of any expectation of contribution other than mere hope. The proctors for claimant Wright refer to the award of $6000 to one Rosa K. Neathery, an aunt of one of the decedents, to show by comparison that an award should also be made to Lillian Wright. However the file on the Neathery claim indicates that the decedent had made a regular allotment of $37 a month to Mrs. Neathery, that she stood in loco parentis to him at the time; that prior to his enlistment in the Navy in 1943 he had contributed at least $10 a week to her and that she was unemployed and actually dependent on the decedent at the time of his death. These facts justify the award to Mrs. Neathery and distinguish it from the Wright claim.

■ It is apparent that the zero claimants have failed to establish by satisfactory proof loss of pecuniary benefits or expectation of such benefits, and therefore the exceptions of these claimants are overruled and the report of the Committee confirmed as to the awards to these claimants.

The claimant Louis Pierre excepts to the award to him as being insufficient. He is the father of the decedent Silvester Pierre and was 62 years of age at the time of his son's death. He alleges that his son contributed approximately $1000 to him annually and that his loss of pecuniary benefits is $9,950. The Committee allowed Louis Pierre an award of $5,000. In his affidavit, Louis Pierre apparently has inflated the amount of contribution from his son, in view of the son's meager earnings, and his claims as to support are for the most part unsubstantiated. The decedent's base pay aboard the Henderson was only $70 a month. The father's allegation of a $50 a month allotment is supported only by a seaman's allotment note from a prior voyage in 1942 on the S.S. Joel Chandler Harris, and there is no record of an allotment while aboard the S.S. J. Pinckney Henderson and no proof as to such allotment was submitted. Further, in addition to the decedent, the claimant has several other adult children who might reasonably be expected to contribute to his support.

■ The Committee states in the report that valuations were based in part by a comparison between each case and similiar cases. Upon examining such other cases and in view of the flimsy proof offered by the claimant, the Court finds that the award to Louis Pierre was eminently fair. The exceptions of the claimant Louis Pierre are overruled.

Returning now to the first group of claimants who have excepted to the Committee's report—they are discussed at pages 6–7 of the report. These claimants received certain sums from the Panama Transport Company between November 1944 and April 1946. In return for these payments, which were substantial, each claimant signed a form (Exhibit B in the Committee's report) which could be interpreted either as a general release or a covenant not to sue Panama Transport Company, but reserving all rights against the S.S. J. Pinckney Henderson and its owner, the United States of America.

The petitioners claim that the payments were voluntary payments by the Panama

Transport Company under a "Disability and Death Benefit Plan." It appears that the payments were represented as such to the claimants. However, since the Panama Transport Company made these "voluntary" payments only upon the individual claimant signing the aforementioned form, the Committee contends that the payments were made in settlement of liability.

The company plan is explained in an affidavit submitted by Walter X. Conner, an attorney associated with the firm representing the Panama Transport Co., in which he states in part:

"At the time of the collision involved in this suit Panama Transport Co. had a plan for offering accident and death payments on account of injuries and death growing out of industrial accidents. However, this plan was not applicable to the members of the crew of the J. H. Senior because they were all aliens. The above five decedents' survivors were Americans and the company decided to extend to these survivors the same benefits which would have accrued to the families if the deceased seamen had been in fact, American seamen.

"The Plan contemplates a private form of workmen's compensation similiar to that applicable to shore injuries in the various states. Indeed, the Plan employs as a yardstick the New Jersey Compensation Act. * * *

"Under the Plan sums calculated under the New Jersey Compensation Act are offered to the survivor in full settlement of any claim, and the survivor has the choice of accepting them or rejecting them. In the event that the amount is acceptable, the survivor agrees to execute and deliver releases and other documents which the company may require. * * *"

This, of course, is a present evaluation of the payments and does not shed much light on the beliefs of the parties at the time the payments were made. There is much doubt in the Court's mind that they were settlement of liability payments, especially considering that the payments were made under the guise of a company "plan"

and ostensibly such payments would be made to those coming under the jurisdiction of the "plan" regardless of any element of liability. Be that as it may, I do not believe that a characterization of the payments is necessary for the conclusion that I have reached.

These payments were made long prior to the stipulation of settlement and its subsequent embodiment in a decree of the district court dated March 30, 1950. The Proctors Committee that acted prior to the decree was well aware of the payments, as evidenced by a letter to various claimants dated February 16, 1949 from the Chairman of the Proctors Committee (who is a member of the present Committee submitting its report) in which he stated at page 3 thereof: "With respect to the decedents who were employed on the J. H. Senior, the committee is advised that some payments have been made to the next of kin direct by the Standard Oil Company of New Jersey in settlement of all claims against the Panama Transport Company. If any such payments have been made, counsel for the claimants should submit the particulars thereof to the committee."

Despite this knowledge on the part of the original Committee, there is no mention or reservation made in the stipulation of settlement or the court decree as to these payments. The settlement agreement was a *voluntary* agreement entered into by all claimants. In determining the powers of the Committee it is this agreement that must be considered. The construction of the agreement must be based upon the intention of the parties who entered into it. Rights of claimants cannot be diminished unless there is an express or implied provision that would cover the situation, for each claimant had the right not to enter into the agreement and to pursue his or her individual remedies.

The settlement agreement and court decree authorized the Committee to determine the validity and amount of each such claim for loss of life, for personal injuries and for loss of personal effects, to compute the pro rata share of each such claimant in said amount of $650,000 and to

distribute such amount as the Court may direct. Neither the agreement nor the order authorizes the Committee to consider the prior payments to the five claims in question here. Whether these claimants would have signed the stipulation had it provided that the payments should be deducted from the pro rata share of the claimants in the fund is a matter of speculation and the Court cannot retrospectively determine that they would have done so.

It should be noted particularly that the two petitioners, the Panama Transport Company and the United States of America, contributed *equally* to the fund. The Panama Transport Co. did not request a credit of $38,210.77 for sums already paid in settlement of its liability. If these payments were truly release of liability or settlement payments, the Panama Transport Co. would have been entitled to assert (and it is most likely that it would have asserted) a claim for a deduction from its share in the fund, which it failed to do. Perhaps its failure to ask for such reduction was an oversight, but the Proctor's Committee was negotiating with the petitioners at the time as to a settlement, and they could have broached the subject or referred to it in the settlement agreement. Since the five claimants have perhaps reaped an undue reward because of somebody's laxity, the Committee now recommends that the payments made to them in effect be distributed amongst all the claimants. This recommendation is beyond the Committee's powers and cannot be followed.

The Committee speaks of these payments as being "voluntarily made by one of two alleged tort feasors in exchange for a release of its tort liability", (p. 7 of report) and briefs have been submitted on the question of tort liability. However on the very same page of the report the Committee states that "The stipulation under which the settlement of the injury and death claims was arranged, and the order entered thereon, expressly exclude any finding or inference as to fault on the part of either vessel involved." In accordance with this statement the Committee made full awards to the claims in respect of the armed guard personnel even though serious doubt existed as to whether they had a right to maintain suit against the United States.

Therefore it is evident that liability was not considered. The claims were evaluated as to validity and amount and it is evident that the five claimants had valid and substantial claims which were assertable under the settlement agreement and court decree. They reserved and had a right to pursue any rights they may have had against the United States of America, and their valid claim against the United States was to be evaluated by the Committee.

It is therefore my conclusion that the Committee's recommendation was unauthorized and the exceptions of the five claimants are sustained. Their awards are to be evaluated without taking into consideration prior payments made to these claimants by the Panama Transport Co.

In order to expedite a final distribution in these proceedings there are several matters which must be disposed of. The Committee has worked hard and accomplished an excellant and unrewarded result. By pre-arrangement the members of the Committee have voluntarily limited their fee for receiving proof and valuing all of the claims to $1000 to each member plus reasonable expenses incurred in connection therewith. Their fees are confirmed and shall be included in the final decree. It has been suggested by one of the proctors that if the Committee could make up and file its bill of disbursements, a stipulation as to such disbursements could be drafted and signed by the proctors for the claimants. This suggestion should be followed as soon as practicable.

The Court will consider making a partial distribution only if a final distribution cannot be effectuated.

Accordingly the exceptions on behalf of the claimants Wright, the estate of Moller, and Pierre are overruled.

The exceptions of the claimants Ellison, Emcken, Fenton, Kjoss and Stoltenberg are sustained.